/

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**KARL DARGE, and CARYL DARGE,**

Plaintiffs,

v.

**DEERE & COMPANY,**

Defendant.

---

Civil No. 01-1759 (JEL/JGL)

**ORDER**

APPEARANCES

Stanley E. Karon, Esq., on behalf of Plaintiffs

John Juneau Wackman, Esq., on behalf of Defendant

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on November 4, 2002 on Plaintiffs' Motion to Compel Deposition of Stephen Davis (Doc. No. 30). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. INTRODUCTION

This case arises out of an August 5, 1999 riding lawn mower accident in which Plaintiff Karl Darge was injured. Plaintiffs allege that when Mr. Darge attempted to stop the mower, he missed the brake and instead hit the accelerator which caused the mower to go straight over a steep ravine,

FILED NOV 1 5 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

injuring Mr. Darge. Plaintiffs allege that Mr. Darge's injuries were caused by poor product design. Specifically, Plaintiffs aver that the brake pedal was too small, and improperly located on the mower. Defendant responds that the mower went over the ravine because Mr. Darge was driving parallel to the edge of the ravine, got too close to the edge, and dipped the wheels over the edge of the ravine causing the mower to fall into the ravine.

On the day after the accident Kevin Kruse, a Deere Service Manager, went to the accident site to investigate, take photographs, and retrieve the mower. (Wacker Aff. Ex. A.) On the same day, Mr. Kruse prepared a Product Incident Report in which he described the accident in the following way:

> Tractor overturn. Darge had been mowing around a small shrub approximately 4 feet from the edge of a ravine. Front wheel apparently dropped over edge of ravine and tractor overturned into it. . . . Tractor overturned 180 degrees. Came to rest against a downed tree. Darge went another 30 to 40 feet down ravine.

(Id.) The Product Incident Report was prepared in response to a Deere memo which requires dealers to promptly report all accidents involving personal injuries. (Pl. Supplemental Mem. Support Mot. Compel.) Dealers are not required to investigate before reporting such incidents. (Id.) A few days after Mr. Kruse prepared his report, Stephen Davis, Manager of Product Claims for Deere's Law Department, went to the Deere dealership where Plaintiff had purchased his mower, interviewed Mr. Kruse, and took photographs of the

mower. (Pl. Mem. Supp. Mot. Compel at 3.) Mr. Davis never visited the accident site. (Davis Aff. ¶ 5.) Defendant avers that Mr. Davis was dispatched at the behest of in-house counsel, and in anticipation of litigation. Plaintiffs respond that Mr. Davis' investigation was done in the ordinary course of business, for the purpose of preventing further accidents and promoting product safety. In the instant motion, Plaintiffs seek an order allowing them to depose Mr. Davis, and ordering production of Mr. Davis' "notes, records, and file regarding discussions with persons at or near the accident scene." (Pl. Mem. Supp. Mot. Compel at 8.) Plaintiffs argue that this information is necessary to impeach the deposition testimony of Mr. Kruse. Defendant objects to this deposition, arguing that any information Mr. Davis may have regarding this case is protected as work product, and is therefore not discoverable.

## II. DISCUSSION

Federal Rule of Civil Procedure 30(a) allows for the taking of the deposition of any person, and the fact that the proposed deponent is the attorney of a party to the action is not an absolute bar to the deposition. See Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). The Eighth Circuit has held that taking opposing counsel's deposition should be confined to the limited situations in which the party seeking the deposition demonstrates that: "(1) no other means exist to obtain the information than to

depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Id. Although Mr. Davis is not an attorney, he was acting at the behest of Defendant's Law Department. The documents and impressions of those acting on behalf of attorneys are protected as work product if prepared in anticipation of litigation. See Fed. R. Civ. P. 26(b)(3); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 603 (8th Cir. 1978). Therefore, the Court finds the test articulated in Shelton appropriate for deciding the instant motion. The Court will now apply the Shelton factors to the facts of this case.

**A. Whether No Other Means Exist to Obtain the Information than to Depose Mr. Davis**

Plaintiffs argue that it is necessary to depose Mr. Davis because Mr. Davis spoke with Mr. Kruse within days of Mr. Kruse's visit to the accident site. Plaintiffs contend that Mr. Kruse's deposition testimony presented a new theory of the accident, one which was not disclosed in Defendant's earlier submissions and disclosures. Specifically, Plaintiffs argue it is necessary to depose Mr. Davis to ascertain "precisely what [Mr. Kruse's] story was within a few days post accident – as contrast [sic] to the story described in his deposition conducted 36 months post accident. It is relevant to the potential impeachment of Kevin Cruse [sic]." (Pl. Mem. Supp. Mot. Compel at 7) (emphasis omitted).

The Court finds that other means exist for determining what Mr. Kruse's "story was within a few days of the accident." Most importantly, Mr. Kruse's Product Incident Report, filed one day after the accident, provides the best evidence of Mr. Kruse's theory of the accident. (Wackman Aff. Ex. A.) In addition, Plaintiffs have deposed Mr. Kruse, his supervisor, and a fellow employee who helped Mr. Kruse retrieve Plaintiffs' mower from the ravine. This testimony and Mr. Kruse's report can all be used for impeachment purposes, if necessary. The Court is not persuaded that interviewing Mr. Davis will amount to anything other than the proverbial fishing expedition. This is especially true in this case where Stephen Kibble, owner and general manager of the dealership that sold Plaintiffs their mower, testified that he was not even certain that Mr. Davis and Mr. Kruse ever discussed the accident. (Kibble Dep. at 11.)

**B. <u>Whether the Information Sought is Relevant and Nonprivileged</u>**

Plaintiffs argue that the information they seek is relevant to this case. Plaintiffs also assert that Mr. Davis' investigation of the accident was done in the ordinary course of business and is therefore not protected under the work product doctrine. For support, Plaintiffs rely on Mr. Kibble's deposition testimony.

Defendant responds that Mr. Davis' investigation was done at the behest of in-house counsel, and in anticipation of litigation. According to

Defendant, Mr. Davis cannot be deposed because the information sought is privileged. For support, Defendant cites to Mr. Davis' affidavit in which he states that he is only called to investigate approximately twenty percent of the accident cases reported to Deere, the cases which will likely result in litigation. (Davis Aff. ¶¶ 2-4.)

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). Parties may obtain discovery on any matter, not privileged, "related to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Under this broad theory, Mr. Davis' potential deposition testimony is relevant. Plaintiffs make a persuasive argument that the information they seek from Mr. Davis is relevant to Deere's defenses in this case.

However, a showing of relevance does not end the inquiry. If the Court finds that the documents prepared by Mr. Davis were prepared in anticipation of litigation, Plaintiffs have the burden to demonstrate their entitlement to them, and their entitlement to depose Mr. Davis. The Federal Rules of Civil Procedure codify "the work product doctrine" and provide, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3). This rule applies to "ordinary work product." See Murphy v. Pfizer, 560 F.2d 326, 335 (8th Cir. 1977); Marvin Lumber v. PPG Indus., Inc., 168 F.R.D. 641, 644. (D. Minn. 1996). However, "opinion work product" which includes attorney's mental impressions, thought process, opinions, conclusions, and legal theories, enjoys almost absolute immunity from discovery. See id. at 644-45 (quoting Shelton, 805 F.2d at 1328).

The Supreme Court has stated that the purpose of the doctrine is to prevent "unwarranted inquiries into the files and mental impressions of an attorney." Hickman v. Taylor, 329 U. S. 495, 510 (1947). The work product doctrine is based on the reasoning that a lawyer must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. However, the protection is a qualified one and the protection will not attach unless documents were prepared specifically in anticipation of litigation. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). Documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" do not fall under the protection of the work product

doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment); see also Simon, 816 F.2d at 401. The fact that a party "anticipates the contingency of litigation resulting from an accident or event" does not bestow automatic work product protection. See Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D. Minn. 1986) (citation omitted); Diversified Indus. v. Meredith, 572 F.2d 596, 603-04 (8th Cir. 1978) (holding that concerns that employee conduct may result in litigation is not enough to give attending investigation reports work product status when attorneys were hired for the sole purpose of investigating and making business recommendations). Furthermore, merely involving an attorney in normal business activities or transferring documents to an attorney or legal department does not make them privileged under the doctrine. See Peterson v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992) (citations omitted). Moreover, relevant facts are not work product because they do not necessarily implicate the origin of the facts that will be used by a party or an attorney's impressions regarding those facts. See Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 518 (D. Minn. 1992).

The Eighth Circuit has adopted a fact-based test to determine if documents were prepared in anticipation of litigation:

> [W]hether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is

> already in prospect, there is not work product immunity for documents prepared in the regular course of business rather than for the purposes of litigation.

Simon, 816 F.2d at 401 (citations omitted).

The Court finds that Mr. Davis' investigation of the accident was not done in the regular course of business, but rather for purposes of litigation. Mr. Davis stated that he does not investigate every accident involving a Deere product, but only those in which Deere anticipates litigation. (Davis Aff. ¶ 3.) Indeed, the mere fact that the Deere Law Department chose to investigate Plaintiff's accident implicates the work product doctrine because it is evidence of a selection process made by Deere's in-house counsel. See Shelton, 805 F.2d at 1328-29 (holding that it was inappropriate to depose opposing counsel regarding selection of documents because inquiries into her recollections of certain documents would likely reveal her mental impressions and legal opinions).

Plaintiffs argue that Mr. Kibble's deposition testimony supports the conclusion that Mr. Davis' investigation was done in the regular course of business. However, an examination of the testimony reveals that Mr. Kibble was not actually sure about Deere's investigative practices. More importantly, Mr. Kibble was not even sure that Mr. Davis discussed the accident with Mr. Kruse. Pertinent portions of Mr. Kibble's deposition testimony follows:

Q: Have you talked with any representatives of John Deere about how the accident happened or the theory of how it might have happened?

A: I have not, no.

Q: Have any of your employees had those discussions as far as you know?

. . .

A: I think the only one that might have, it would have been Kevin [Kruse] when, I believe it was Mr. Davis came out after we – we filed the accident report with John Deere. I don't know if they discussed that or not, but I know Kevin went out there with him when they took pictures.

. . .

Q: Is that when John Davis came out?

A: You know, I don't recall. I think – I think Davis might have came [sic] out a few days after that, because I know Kevin – Kevin took the pictures when he went out there the day to retrieve the lawn mower and then I think he went back out there again with Mr. Davis.

. . .

Q: And the purpose of the – his coming out and investigating, do you have any idea?

A: Well, any time we have an accident with any machinery we sell, John Deere has a 1-800 number, a hot line that we call, and report the accident immediately.

Q: So it's a business practice of their's; whenever there's an accident whether or not there might be a claim, you call in?

A: Correct.

Q: And then it's followed up by an investigator coming out to look at the machine and possibly the accident scene; is that part of their practice?

A: I believe that's – I think that's their procedure, yes.

Q: That's what they – John Deere has told you their procedure is?

A: Well, they've never – I – I don't think they have it written out in a manual or anything, but I – I believe that's – I think that's their procedure, yes.

Q: I assume that's based upon what you either were told by John Deere or what you've observed over the years?

A: Yes.

Q: When you would call – call into the John Deere accident line if there's an accident involving a John Deere product, their practice was to come out and look at the accident scene and the – the machine; is that right?

A: Yes.

(Kibble Dep. at 11-14.) This exchange demonstrates that Mr. Kibble was not certain about Deere's investigative policies, and more importantly, that he was not even sure that Mr. Davis discussed this accident with Mr. Kruse. Mr. Davis states that he never visited the accident site. (Davis Aff. ¶ 5.) On the other hand, Mr. Davis' affidavit and Defense Counsel's representations at the motion hearing clarify that once Deere receives an Incident Report, the Deere Legal Department looks at the report, decides which incidents will likely lead to litigation, and then sends Mr. Davis out to investigate only the approximately twenty percent of incidents in which it anticipates litigation.

Although there is some evidence to support both Parties' theory of the purpose of Mr. Davis' investigation, the Court finds that Defendant has the better argument. Moreover, even if the Court were persuaded that Mr. Davis' investigation was "intertwined between prospective litigation and non-litigation business purposes," the work product doctrine would still attach. See Marvin Lumber, 168 F.R.D. at 645 (citing Diversified Indus., 572 F.2d at 610.) Therefore, although arguably relevant to the issues in this case, the information sought is protected work product. Under these circumstances, the Court finds deposing Mr. Davis inappropriate.

### C. **Whether the Information is Crucial to the Preparation of the Case**

Plaintiffs argue that the information they may glean from deposing Mr. Davis is crucial to their preparation of this case. At the motion hearing, Plaintiffs' counsel stated that if the jury believes Defendant's version of the accident, Plaintiffs' theory of liability based on faulty design is "out the window." According to Plaintiffs, it is crucial to depose Mr. Davis to obtain impeaching information which could undermine Mr. Kruse's deposition testimony relating to how the accident occurred. The Court does not find this type of information crucial to the preparation of Plaintiffs' case. Understandably, Plaintiffs would like the opportunity to investigate every avenue for possible impeaching information. However, that desire does not overcome the high value the courts place on an attorney's work product. The

Court is convinced that Mr. Kruse's Product Incident Report, written one day after the accident and at the time Mr. Kruse visited the accident site, is the best contemporaneous evidence of what Mr. Kruse was thinking when he visited the accident scene. Even without that evidence, the Court is not persuaded that deposing Mr. Davis would yield information crucial to Plaintiffs' case. Plaintiffs proffer no evidence that makes it more likely than not that Mr. Davis is privy to impeaching, nonprivileged information. Mr. Kibble testified that he is not even certain that Mr. Kruse and Mr. Davis discussed the accident. (Kibble Dep. at 11.) At this point, Plaintiffs' contention is purely hypothetical. The Court is not prepared to order the deposition of opposing counsel's agent based on speculation. Moreover, Plaintiffs are not without the ability to impeach Mr. Kruse. Accordingly, the Court finds that Plaintiffs are not entitled to depose Mr. Davis. This part of Plaintiffs' motion is denied. The question remains whether Plaintiffs are entitled to Mr. Davis' "notes, records, and file regarding discussions with persons at or near the accident scene." (Pl. Mem. Supp. Mot. Compel at 8.)

**D. <u>Whether Plaintiffs are Entitled to the Documents Under Rule 26(b)(3)</u>**

Defendant has already produced Mr. Davis' photographs of the mower. In order for Plaintiffs to obtain discovery of other ordinary work product, they must demonstrate only "substantial need" and "undue hardship." <u>See</u> Fed. R. Civ. P. 26(b)(3); <u>Murphy</u>, 560 F.2d at 335 (citations omitted). On

the other hand, opinion work product – the mental impressions, conclusions, or opinions of an attorney regarding litigation – are discoverable only in "rare and extraordinary circumstances." Murphy, 560 F.2d at 336 (citations omitted); Fed. R. Civ. P. 26(b)(3).

Any notes that Mr. Davis took during his interview with Mr. Kruse or others are opinion work product entitled to absolute protection. See Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) ("attorney's personal recollections, notes and memoranda from interviews are absolutely protected work product") (quoting In Re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973)). Mr. Davis' notes are entitled to such protection even if they may contain some objective facts, something for which there is no evidence, because the notes most likely focus on the facts that Mr. Davis found legally significant, and thus represent a selection decision. See id. Thus, although Mr. Davis' testimony and notes may yield relevant information, they are not discoverable.

Even if the Court were to conclude that Mr. Davis' notes were ordinary rather than opinion work product, Plaintiffs have not met their burden by demonstrating the substantial need required under the Rules. The desire to gather impeaching evidence does not overcome the protections of the work product doctrine. See Banks v. Wilson, 151 F.R.D. 109, 114 (D. Minn. 1993). At this point, the Court has no reason to believe that Mr. Davis' notes

contain any impeaching information. As the Banks court said, "Mere speculation as to the content of the statement is unavailing to satisfy the express requisites of Rule 26(b)(3)." Id. Accordingly, this part of Plaintiffs' motion is also denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Deposition of Stephen Davis (Doc. No. 30) is **DENIED**.

Dated: November 14, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge